# LAW OFFICES OF
# THOMAS F. LIOTTI, LLC

600 OLD COUNTRY ROAD - SUITE 530
GARDEN CITY, NEW YORK 11530

TELEPHONE: (516) 794-4700
FACSIMILE: (516) 794-2816
WEBSITE: www.tliotti.com

THOMAS F. LIOTTI✦

LUCIA MARIA CIARAVINO*
*Also Admitted in CT

KATURIA D'AMATO, ESQ.
Of Counsel

JEAN LAGRASTA
ELLEN LUXMORE
Paralegals

April 10, 2019

**Sent via ECF only**
Honorable Steven I. Locke
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza, Courtroom 820
Central Islip, New York 11722

Re:   *Patricia Cummings v. The City of New York, et al.*
       *Docket No. 19 CV 01664 (SJF) (SIL)*

Dear Judge Locke:

Our office represents the Plaintiff, Patricia Cummings (Plaintiff), with regard to the above referenced matter. I write to you in opposition to the letter motion filed by counsel for the City of New York Defendants on April 4, 2019, requesting a transfer of this case to the Southern District of New York pursuant to 28 U.S.C. § 1404. The Plaintiff is unwilling to consent to the transfer of this matter.

The general transfer-of-venue statute, Section 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether transfer is appropriate, the Court must consider the "the private and public interests protected by the language of § 1404(a)," and that it is the movants' burden to establish the need for transfer. See, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In *Jumara*, the Court explained that the relevant private interests included:

> "(1) plaintiffs forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." See, *Jumara*, 55 F.3d at 879.

The Court further explained that the relevant public interests included:

1

> "(7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases." Id. at 879-80.

28 U.S.C. 1404(a) is, essentially, a codification of the doctrine of *forum non conveniens* for cases in which the transferee forum is within the federal court system. The purpose of this statute is to enable the trial of an action to be held in the forum most convenient for all persons and interests concerned, and the language of the statute clearly appears to direct this result. In spite of the seemingly unambiguous language, the attempt to interpret Section 1404(a) correctly has resulted in an astonishing bulk of litigation. One of the most controversial problems arising under the statute, the proper interpretation of the phrase *"where it might have been brought"* has recently been resolved by the United States Supreme Court in the case of *Hoffman v. Blaski*, 363 U.S. 335 (1960). In *Blaski*, supra, the Supreme Court severely limited the scope of 1404(a). In short, a defendant's venue-option should not be greater than the plaintiff's. Thus "under 1404(a) a district judge is not authorized to transfer at the whim of the moving party, but only when the 'convenience of the parties and witnesses, in the interest of justice' require." Id. Therefore, any legitimate objection by the Plaintiff to the Defendants' motion to transfer would be reflected in a decision that the interest of justice does not require the transfer.

The Plaintiff was a probationary New York City Public School Teacher at The William W. Niles School - Middle School 118, Community School District 10, in Bronx County, New York. She seeks damages related *inter alia* to the infliction of defamation, reverse discrimination, denial of due process, severe emotional, psychological, and physical distress, loss of reputation, loss of income, and expenses upon her, and the erroneous termination of her employment as a New York City school teacher.

This matter arose as a result of what was fallaciously reported concerning an alleged complaint made by a parent of a student regarding a lesson taught by the Plaintiff in her social studies class on the Middle Passage, wherein she subsequently and unwillingly became the subject of a front page pictorial and story in the New York Daily News, falsely accusing her of being a *"racist"* and *"making black students lie face down on the floor of her class, and asking them '[H]ow does it feel to be a slave?"* As a result, this fabricated and erroneous set of *"facts"* was picked up by the media worldwide and transmitted to various news outlets and appeared online and in media all over the world, but particularly within the counties comprising the City of New York. The Plaintiff was featured in several prominent newspapers and televised news programs, as well as on YouTube, where it was erroneously reported, among other things that she "singled out black students and made them act like slaves;" she is falsely reported to have told them to "lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like." She has been publically shamed and falsely accused of "child abuse," labeled as a "racist," referred to as an "oppressor," by many, including politicians and activists, and specifically in various and extensive media outlets discussing this issue. She has received direct threats of violence and death causing her to fear for her life. The Plaintiff was ultimately exonerated of the erroneous allegations following an investigation by the New York City Department of Education's Office of Special Investigations, yet has nonetheless been terminated from her employment as New York City Public School Teacher at The William W. Niles School - Middle School 118.

The argument promulgated by the City Defendants herein overlooks the significant amount of prejudice to the Plaintiff that would result in this matter being transferred to New York County, and the inability for the Plaintiff's causes of action to receive an unbiased consideration by a panel of jurors.

The Plaintiff commenced a civil action on January 10, 2019, in the Supreme Court in the County of Suffolk, where she resides. CPLR §509 provides that, "notwithstanding any provision of this article, the place of trial of an action shall be in the county designated by the Plaintiff, unless the place of trial is changed to another county by order upon motion, or by consent as provided in CPLR §511(b)."

On February 19, 2019, our office received the City Defendants' Demand for a Complaint, and on that same date, our office received the City Defendant's a Demand for a Change of Venue from Suffolk County to New York County, *inter alia*, on the ground that Suffolk County is an improper county for venue. Plaintiff did not consent to the demand, and the City Defendants purchased an index number in New York County Supreme Court and moved for a change of venue under CPLR §§ 504(2) (3), and 511(a) and (b). The Plaintiff opposed said motion, which is still pending before the Honorable Julio Rodriguez, III, in the Supreme Court, New York County, under Index No. 100277/2019. The City Defendants did not submit a Reply and never withdrew that action. See, CPLR § 511 (b), which states:

> "(b) Demand for change of place of trial upon ground of improper venue, where motion made. The defendant shall serve a written demand that the action be tried in a county he specifies as proper. Thereafter the defendant may move to change the place of trial within fifteen days after service of the demand, unless within five days after such service plaintiff serves a written consent to change the place of trial to that specified by the defendant. Defendant may notice such motion to be heard as if the action were pending in the county he specified, unless plaintiff within five days after service of the demand serves an affidavit showing either that the county specified by the defendant is not proper or that the county designated by him is proper."

On or about March 22, 2019, our office received notice of the City Defendants' Notice of Removal to Federal Court transferring the case to the United States Eastern District of New York. Thereafter, on April 2, 2019, the Plaintiff's counsel was contacted by the City Defendant's counsel requesting consent to a further transfer the matter to the United States Southern District of New York; the Plaintiff refused to consent to the transfer.

The City Defendants have designated New York County as the proper place of venue of the action, citing, CPLR §§ 504(2) (3), and 511(a) and (b), in their motion in the Supreme Court, which requires that the venue for actions brought against school districts, or any of their officers, boards, or departments to be brought in the county where the school district is located, or if they are located in more than one county, in any of the counties where they are located, and that any action against the City of New York be brought in the county within City where the cause of action arose. In this regard, the City Defendants further cited to CPLR § 510(1), arguing that venue is subject to change where a Plaintiff designates venue in the wrong county. While it undisputed that the Plaintiffs' claim arose in Bronx County, where the school district in question is located, the City Defendants contend that the action must be brought in New York County in accordance with the statute, yet fail to demonstrate that the Plaintiff will not be prejudiced by a venue change to New York County. Further, CPLR §504 (2) is

inapplicable as the City is not the only Defendant in the action.

CPLR §§504(2) and (3) provide:

> "Notwithstanding the provisions of any charter heretofore granted by the state and subject to the provisions of subdivision (b) of section 506, the place of trial of all actions against counties, cities, towns, villages, school districts and district corporations or any of their officers, boards or departments shall be, for:
>
> 2. a city, except the city of New York, town, village, school district or district corporation, in the county in which such city, town, village, school district or district corporation is situated, or if such school district or district corporation is situated in more than one county, in either county;"
>
> 3. the city of New York, in the county within the city in which the cause of action arose, or if it arose outside of the city, in the county of New York."

Nonetheless, CPLR §510 (2), must also be considered, which examines a reason to believe that an impartial trial cannot be had in what otherwise may be designated as the proper county. To effectuate CPLR §510 (2), "there must a production of admissible factual evidence demonstrating a strong possibility that an impartial trial cannot be obtained in the county where venue is properly placed." See, *Miller-Frankel v. Frankel*, 93 AD3d 826, 827 [2d Dept. 2012]; see also, *Matter of Michiel*, 48 AD3d 687, 687 [2d Dept. 2008]; *Behrins & Behrins, P.C. v. Chan*, 40 AD3d 560, 560 [2d Dept. 2007]; *Jablonski v. Trost*, 245 AD2d 338, 339-40 [2d Dept. 1997].

When making a motion to transfer venue, "[t]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" See, *Audiovox Corp. v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656, 2012 WL 3061518, at (E.D.N.Y. July 26, 2012) (quoting N.Y. *Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F. 3d 102, 114 (2d Cir. 2010)); see also, *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006). At the same time, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F. 2d 110, 117 (2d Cir. 1992) (citing, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)); see also, *EasyWeb Innovations, LLC*, 888 F. Supp. 2d 342, 2012 WL 3755410.

To determine whether a motion to transfer venue should be granted, the court must apply a two-pronged test: "(A) whether the action could have been brought in the proposed forum; and (B) whether the transfer would 'promote the convenience of parties and witnesses and would be in the interests of justice.'" EasyWeb Innovations, LLC, 888 F. Supp. 2d 342, 2012 WL 3755410, at *3 (quoting Clarendon Nat'l Ins. Co. v. Pascual, 2000 U.S. Dist. LEXIS 2881, 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000)).

Under 28 U.S.C. § 1404(a), this Court may grant a motion to transfer "for the convenience of the parties and witnesses, in the interest of justice...." However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

4

disturbed." See, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); *Magnavox Co. v. Bally Manufacturing Corp.*, 414 F. Supp. 891 (1976). Moreover, since Plaintiff is a resident of this judicial district, her choice of venue is entitled to considerable deference. See, *Hess v. Gray*, 85 F.R.D. 15, 24 (1979).

  An appropriate inquiry is whether a proposed transfer will promote convenience and fairness, and is in the interest of justice. See, *Nabisco, Inc. v. Brach's Confections, Inc.*, 2000 U.S. Dist. LEXIS 16168, 2000 WL 1677935. As to this prong of the test, a court may consider the following non-exhaustive list of factors, none of which are dispositive: a) plaintiff's choice of forum; b) convenience of witnesses; c) convenience of parties; d) locus of operative facts; e) ease of access to sources of proof; f) relative means of parties; g) availability of process to compel witness attendance; h) trial efficiency and interests of justice; and I) the forum's familiarity with governing law. See, *Zaitsev v. State Farm Fire & Gas, Co.*, 2005 U.S. Dist. LEXIS 30325, 2005 WL 3088326, (E.D.N.Y. Nov. 17, 2005); see also, *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F. 3d 95, 106-07 (2d Cir. 2006).

  Here, venue is sought to be transferred from the Eastern District of New York to the Southern District. Given the close proximity of these venues, courts in both districts consider the following factors to be relatively neutral for the purpose of the transfer analysis: convenience of the parties, convenience of material witnesses, availability of process to compel the presence of unwilling witnesses, cost of obtaining the presence of witnesses; relative ease of access to sources of proof, calendar congestion, and where the events at issue took place. See, *Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 449 (E.D.N.Y. 2011). Therefore, the two principle issues this Court must resolve are, "(1) how much deference to give the plaintiff's choice of forum and (2) how to weigh the interest of justice." Id.

  The City Defendants erroneously accuse the Plaintiff of forum shopping, when in fact, it is they who are forum shopping. When the City Defendants sought to move the matter to the Federal Court, they, upon information and belief, assumed that the matter would be removed to the Eastern District in Brooklyn; however, when the action was actually removed to the Eastern District in Central Islip, Suffolk County, the City Defendants sought, once again, to have it transferred to the Southern District of New York. Plaintiff asserts that under these circumstances, she is entitled to deference, and claims she is not forum shopping because the Eastern District of New York, in Central Islip, Suffolk County is an appropriate forum that will not disadvantage Defendants, but the Southern District in New York City will greatly prejudice the Plaintiff.

  "It is well settled that the plaintiff's choice of forum is 'given great weight.'" See, *EasyWeb Innovations, LLC*, 888 F. Supp. 2d 342, 2012 WL 3755410, (quoting, *D.H. Blair & Co., Inc.*, supra, at 107). Where the forum is not a plaintiff's home district, the plaintiff's choice of forum is given less deference. See, *Nabisco, Inc.*, supra, citing, *Hall v. South Orange*, 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000). The Plaintiff resides in Suffolk County, which is within the Eastern District of New York, not the Southern District of New York. Significantly, there is greater evidence that the City Defendants are forum shopping.

  As a result of the events complained of in this proceeding, the Plaintiff became the subject of a front page story in the New York Daily News, falsely and publically accusing her of being a *"racist"* and alleging that she *"made black students lie face down on the floor of her class, and asked them '[H]ow does it feel to be a slave?'* " As a result, this fabricated and erroneous set of "facts" perpetrated by the Defendants was picked up by the media worldwide and transmitted to various news outlets and appeared online and in media all over the world. The Plaintiff was featured in several prominent newspapers and televised news programs, as

5

well as on YouTube, where it is erroneously reported, among other things that she "*singled out black students and made them act like slaves;*" she is reported to have told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" She has been publically accused of "*child abuse,*" labeled as a "*racist,*" referred to as an "*oppressor,*" by many, including politicians and activists, and specifically by Ben Chapman, a reporter from the New York Daily News and Dr. Andre Perry in the Hechinger Report, a nonprofit, independent news organization focused on inequality and innovation in education. The Plaintiff has been publically referred to as, among other things, a "*racist,*" a "*bigot*" a "*cracker,*" and a "*white devil,*" by New York City Power 105.1 radio personality, Lenard Larry McKelvey, known professionally as "*Charlamagne tha God;*" and, among other things, as a "*cave animal*" and a "*white supremacist*" by Philip Scott, a YouTube personality, host of *The AdviseShowTV* channel, proclaiming a commitment to reporting "truthful" and "accurate news;" where he has over a million subscribers listening to his social and political commentary, and further by other members of the general public in various and extensive online media posts discussing this issue. The audience for these media outlets are generally within New York County and the five boroughs comprising New York City. Annexed hereto as **Exhibit A**, are copies of several instances of local publicity and comments of influential figures within the New York City community, and the amount of local popular passion and prejudice that has been ignited by these erroneous allegations[1]. There were many, many more of these accounts that are not included herein in an effort to avoid overwhelming this Court. There would be no opportunity for the Plaintiff to receive a fair trial in any of the counties comprising New York City.

      The Plaintiff has already been presumed to be guilty in these areas. This rush to judgment is a denial of due process and the equal protection of the laws. Politicians, parents, students, investigators, the Department of Education, irresponsible media, and school officials responsible for this injustice have promulgated and promoted "fake news" stories concerning the Plaintiff. Since February 1, 2018, the Plaintiff has found herself having to publically defend her reputation and integrity, as a direct result of the actions of the Defendants.

      The actions by the Defendants directly resulted in an erroneous news articles being written and subjecting the Plaintiff to defamation. As a result of the Defendant's actions, the Plaintiff has been erroneously and permanently labeled and identified as a "racist," publically humiliated, and subjected to public scrutiny, causing a degradation of her professional status and reputation, death threats, and numerous threats of physical harm. Her competency and credibility has been irreparably harmed, particularly among the communities encompassing the City of New York; particularly New York County.

      The Plaintiff's reputation within the City of New York has been permanently damaged, the extent of which is extremely widespread. Her professional career is substantially compromised, and she has been unwillingly exposed to extensive negative notoriety, which has publically humiliated and embarrassed her and subjected her to threats of violence, assault, and death.

      The City Defendant's reliance upon a strict interpretation of the statute without considering the impact and prejudice to the Plaintiff would be an absolute travesty of justice. One may appropriately conclude from a review of the opinions that, in accordance with CPLR

---

[1] This fabricated incident sparked protests around the city and led New York City Mayor Bill de Blasio to earmark $23 million ($23,000,000.00) for anti-bias training for New York City educators. De Blasio slammed the alleged actions of the Plaintiff at an unrelated press conference, stating, "It's not acceptable. It's not even close," de Blasio said when asked about the allegations. "*I don't know any teacher in their right mind who would do something like that.*"

§510 (2), both the individual and institutional interests in impartiality, fairness, and the avoidance of an appearance of impropriety are to be recognized, and necessarily weighed against the individual and institutional interests in access to the courts and a proper and convenient forum. One may also appropriately conclude that on these issues, as on many others, the trial court must pay attention at least as much to what the appellate courts are doing as to what they are saying, when faced with unique circumstances such as these.

Under the unique circumstances of this case, the extensive evidence demonstrating that the bias that would exist against the Plaintiff should this action be removed to New York County, would be overwhelming; and the protection of the court from even a possible appearance of impropriety requires the venue of this action to be outside of any of the counties of the City of New York. See, *Saxe v. OB/GYN Assoc.*, 86 NY2d 820, 822; *Kavelman v. Taylor*, 245 AD2d 9; *Milazzo v. Long Is. Light. Co.*, 106 AD2d 495.

The Courts have otherwise found that the great deal of local publicity concerning an emotionally charged event, as well as comments of influential figures within the community, could "excite local popular passion and prejudice" (see, *People v. DiPiazza*, 24 NY2d 342, 347, 300 NYS2d 545, 248 NE2d 412 (1969)), and thereby affect the impartiality of the jurors in a trial, and ultimately impact their deliberations if trial was held in a County associated with the New York City Department of Education.

In this regard, where there is a conflict of applicable venue provisions, CPLR §502 authorizes the court to determine the most appropriate venue by taking into consideration a number discretionary factors, including the ends of justice, set forth in CPLR §510 (2) and (3). See, *Fucito v. Board of Educ. of City of New York*, 190 AD2d 605, 606 [1st Dept. 1993]; *Grumet v. Pataki*, 244 AD2d 31, 35 [3d Dept.], motion to vacate denied, 92 NY2d 914 [1998], affirmed 93 NY2d 677, certiorari denied 528 US 946 [1999]; *Bennett v. Bennett*, 49 AD3d 949, 949 [3d Dept. 2008]; Siegel, New York Practice § 116, at 217 n 13 [5th ed].

Further, even from a Constitutional perspective, due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power. See, *Marchant v. Pennsylvania R.R.*, 153 U.S. 380, 386 (1894). In civil contexts, however, a balancing test is used that evaluates the government's chosen procedure with respect to the private interest affected, the risk of erroneous deprivation of that interest under the chosen procedure, and the government interest at stake. See, *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Just as in criminal and quasi-criminal cases, an impartial decision-maker is an essential right in civil proceedings as well. See, *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. . . . At the same time, it preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." See, *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980); *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). In addition, although "[p]ersonal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under the Due Process Clause,'" there "are circumstances 'in which experience teaches that the probability of actual bias on the part of the decision-maker is too high to be constitutionally tolerable.'" Id.

Despite CPLR §§ 504 (2) and (3), the valid concerns of the extreme amount of local publicity concerning this emotionally and racially charged event, and the extreme and derogatory comments made against the Plaintiff by numerous influential figures within the

community, this matter would unquestionably be described as significantly having excited local popular passion and prejudice, and created a negative notoriety that would undoubtedly and negatively affect the impartiality of the jurors in New York City, such that it would be impossible for the Plaintiff to have her claims fairly adjudicated. Thus, the City Defendants' motion to transfer this matter to the Southern District must be denied in its entirety.

Thank you for your attention and courtesies.

Respectfully,

Thomas F. Liotti