19 Civ. 01664 (SJF) (SIL)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICIA CUMMINGS,

                                                                    Plaintiff,

- against -

THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF
EDUCATION; CITY OF NEW YORK OFFICE OF SPECIAL
INVESTIGATIONS; NYC MAYOR BILL de BLASIO; GIULIA COX;
COURTNEY WARE; BEN CHAPMAN; NEW YORK DAILY NEWS;
DR. ANDRE PERRY; THE HECHINGER REPORT a/k/a HECHINGER
INSTITUTE ON EDUCATION AND THE MEDIA; LENARD LARRY
McKELVEY a/k/a *CHARLAMAGNE THA GOD*; WWPR-FM (105.1
MHZ); iHEARTMEDIA; CLEAR CHANNEL COMMUNICATIONS,
INC.; NEW YORK STATE SENATOR, KEVIN S. PARKER;
COUNCILMAN, JUMAANE D. WILLIAMS; COUNCILMAN, DANIEL
DROMM; COALITION OF EUDCATIONAL JUSTICE; ANGEL
MARTINEZ; NATASHA CAPERS, and "JOHN DOE AND JANE DOE
#1-100" said names being fictitious, it being the intent of Plaintiff to
designate any and all individuals, officers, members, agents, servants, and/or
employees of the aforementioned agencies owing a duty of care to Plaintiff,
individually and jointly and severally,

                                                                    Defendants.

**DOE DEFENDANTS AND CITY DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS THE COMPLAINT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Aliza J. Balog*
*Tel:  (212)356-1104*
*Matter No. 2018-080725*

**TABLE OF CONTENTS**

**Page**

**PRELIMINARY STATEMENT** ............................................................................... 1

**FACTUAL BACKGROUND** ................................................................................. 2

      A.  PLAINTIFF'S 7TH GRADE LESSON ON
          THE MIDDLE  PASSAGE ....................................................... 2

      B.  THE DOE INVESTIGATION, DAILY NEWS
          ARTICLE, & PLAINTIFF'S
          REASSIGNMENT FROM X118 ............................................... 3

      C.  DOE'S TERMINATION OF PLAINTIFF'S
          EMPLOYMENT ....................................................................... 7

      D.  THE STATEMENTS OF MAYOR DE
          BLASIO, COUNCILMEMBER WILLIAMS,
          AND COUNCILMEMBER DROMM ...................................... 8

      E.  PLAINTIFF'S NOTICE OF CLAIM & STATE
          COURT SUMMONS ............................................................... 10

**ARGUMENT** ....................................................................................................... 10

        POINT I ..................................................................................... 10

        PLAINTIFF'S CONSTITUTIONAl LAW
        CLAIMS FAIL.......................................................................... 10

      A.  PLAINTIFF'S DUE PROCESS CLAIMS
          FAIL ........................................................................................ 10

      1.  No Deprivation of a Property Interest ............................... 11

      2.  No Deprivation of a Liberty Interest ................................. 12

      B.  PLAINTIFF'S EQUAL PROTECTION
          CLAIM SHOULD BE DISMISSED ..................................... 14

      C.  PLAINTIFF'S OTHER CONSTITUTIONAL
          LAW CLAIMS FAIL ............................................................. 15

      D.  THE CITY OF NEW YORK IS NOT THE
          PROPER PARTY FOR THE
          CONSTITUTIONAL CLAIMS ........................................... 16

E.   NO PRIVATE RIGHT OF ACTION UNDER
§1981 ................................................................................. 16

F.   NO *MONELL* CLAIM ........................................................ 16

POINT II ............................................................................................ 18

PLAINTIFF'S STATE LAW CLAIMS FAIL. ...................................... 18

A.   FAILURE TO FILE A TIMELY NOTICE OF
CLAIM ................................................................................. 18

B.   NO TORT CLAIMS............................................................. 19

1.   Plaintiff's Defamation Claims Fail .................................... 19

a.   The claim against Mayor de Blasio fails..................... 19

b.   The claims against the Councilmembers fail.............. 22

2.   Plaintiff's Fraud Claim Should Be Dismissed................... 24

3.   Plaintiff's IIED and NIED Claims Fail ............................. 24

4.   Plaintiff's Negligence Claim Fails..................................... 26

C.   PLAINTIFF'S BREACH OF CONTRACT
CLAIM SHOULD BE DISMISED ................................... 27

POINT III............................................................................................ 28

OSI IS NOT A SUABLE ENTITY. ...................................................... 28

**CONCLUSION** ................................................................................. 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. New York State Educ. Dep't*,
  732 F. Supp. 2d 420 (S.D.N.Y. 2010)....................................................................................12

*Ahmed v. Gelfand*,
  160 F. Supp. 2d 408 (E.D.N.Y. Mar. 15, 2011)....................................................................26

*Alexander v. Westbury Union Free Sch. Dist.*,
  829 F. Supp. 2d 89 (E.D.N.Y. 2011) ..............................................................................25, 26

*Anemone v. Metro. Trans. Auth.*,
  629 F.3d 97 (2d Cir. 2011)..................................................................................................14

*Barr v. Matteo*,
  360 U.S. 564 (1959)..........................................................................................................20

*Batista v. DeGennaro*,
  13 Civ. 1099 (DAB), 2015 U.S. Dist. LEXIS 44022 (S.D.N.Y. Mar. 31, 2015) ...................14

*Bd. of Cnty Comm'rs v. Brown*,
  520 U.S. 397 (1997)..........................................................................................................17

*Belgrave v. City of New York*,
  1999 U.S. Dist. LEXIS 13622 (E.D.N.Y. Aug. 31, 1999).....................................................28

*Berlyn v. Board of Ed. of E. Meadow Union Free Sch. Dist.*,
  80 A.D.2d 572 (2d Dep't 1981), *aff'd* 55 N.Y.2d 912 (1982) ................................................27

*Borzellieri v. Daily News, L.P.*,
   975 N.Y.S. 2d 365 (N.Y. Sup. Ct. Queens Cnty 2013) .......................................................23

*Browning-Ferris Indus. v. Kelco Disposal*,
  492 U.S. 257 (1989)..........................................................................................................16

*City of Los Angeles v. Heller*,
  475 U.S. 796 (1986)..........................................................................................................17

*Clark v. Advanced Composites Grp.*,
  2019 U.S. Dist. LEXIS 80639 (S.D.N.Y. May 9, 2019)........................................................24

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985)..........................................................................................................11

*Cosme v. Town of Islip*,
102 A.D.2d 717 (1st Dep't 1984) ......................................................21

*Daniel v. T&M Prot. Res., Inc.*,
992 F. Supp. 2d 302 (S.D.N.Y. 2014), *vacated and remanded on other
grounds* by 689 Fed. Appx. 1(2d Cir. 2017).......................................26

*Dillon v. City of New York*,
261 A.D.2d 34 (1st Dep't 1999) .................................................19, 25

*Dollman v. Mast Indus.*,
731 F. Supp. 2d 328 (S.D.N.Y. 2010)................................................26

*Duplan v. City of New York*,
888 F.3d 612 (2d Cir. 2018)...............................................................16

*Dwares v. City of N.Y.*,
985 F.2d 94 (2d Cir. 1993).................................................................17

*Energy Brands, Inc. v. Cnty. of Nassau*,
266 A.D.2d 501 (2d Dep't 1999) .......................................................21

*Fahmy v. Duane Reade, Inc.*,
2005 U.S. Dist. LEXIS 20929 (S.D.N.Y. Sept. 26, 2005).................25

*Falchenberg v. N.Y.C. Dep't of Educ.*,
375 F. Supp. 2d 344 (S.D.N.Y. 2005).................................................16

*Farrow v. O'Connor, Redd, Gollihue & Sklarin, LLP*,
51 A.D.3d 626 (2d Dep't 2008) .........................................................22

*Finley v. Giacobbe*,
79 F.3d 1285 (2d Cir. 1996)...............................................................11

*Fleming v. Hymes-Esposito*,
2013 U.S. Dist. LEXIS 45912 (S.D.N.Y. Mar. 29, 2013) .................22

*Forde v. Empire State Coll.*,
2011 U.S. Dist. LEXIS 105767 (S.D.N.Y. Sep. 19, 2011).................15

*Fox v. N.Y.C. Dep't of Educ.*,
2015 U.S. Dist. LEXIS 110857 (S.D.N.Y. Aug. 20, 2015).................29

*Gutt v. Nassau Health Care Corp.*,
2005 U.S. Dist. LEXIS 38775 (E.D.N.Y. March 23, 2005).................27

*Hakim v. James*,
169 A.D.3d 450 (1st Dep't 2019) .......................................................22

*Hargett v. Metro. Tr. Auth.*,
552 F. Supp. 2d 393 (S.D.N.Y. 2008*), aff'd on other grounds*, 381 Fed. Appx.
12 (2d Cir. 2010).........................................................................................................28

*Horan v. BOCES*,
2015 U.S. Dist. LEXIS 144754 (E.D.N.Y. Oct. 26, 2015)....................................27

*Hughes v. City of New York*,
197 F. Supp. 3d 467 (E.D.N.Y. 2016),
*aff'd in part and rev'd in part*, 680 F. Appx. 8 (2d Cir. 2017)..............................14

*Humphries v. City Univ. of N.Y.*,
2013 U.S. Dist. LEXIS 169086 (S.D.N.Y. Nov. 26, 2013)...................................15

*Ingraham v. Wright*,
430 U.S. 65 (1977)...............................................................................................16

*Jett v. Dallas Indep. School Dist.*,
491 U.S. 701 (1989).............................................................................................16

*Johnson v. Andy Frain Servs.*,
2014 U.S. Dist. LEXIS 84430 (E.D.N.Y. June 19, 2014),
*aff'd* 638 Fed. Appx. 68 (2d Cir. 2016) ..............................................................14

*Johnson v. N.Y.C. Bd. of Educ.*,
249 A.D.2d 370 (2d Dep't 1998) ........................................................................27

*Kane v. City of Ithaca*,
2018 U.S. Dist. LEXIS 131457 (N.D.N.Y. Aug. 6, 2018) ...................................28

*Lauer v. City of New York*,
240 A.D.2d 543 (2d Dep't 1997) ........................................................................25

*Lombardo v. Stoke*,
18 N.Y.2d 394 (1966) .....................................................................................20, 21

*Madera v. Board of Education*,
386 F.2d 778 (2d Cir. 1967).................................................................................16

*Mann v. Abel*,
10 N.Y.3d 271 (2008) ..........................................................................................23

*Martinez v. City of Schenectady*,
97 N.Y.2d 78 (2001) ............................................................................................11

*Martinez v. O'Leary*,
2013 U.S. Dist. LEXIS 94050 (E.D.N.Y. June 28, 2013) ....................................26

v

*Melius v. Glacken*,
 94 A.D.3d 959 (2d Dep't 2012) ...................................................................22, 23

*Melzer v. Bd of Educ. of the City Sch. Dist. of the City of N.Y.*,
 363 F.3d 185 (2d Cir. 2003)................................................................................21

*Monell v. Dept' of Sc. Servs.*,
 436 U.S. 658 (1978)............................................................................................17

*Moore v. N.Y.C. Dep't of Educ.*,
 2004 U.S. Dist. LEXIS 5338 (S.D.N.Y. Mar. 31, 2004) ......................................19

*Norgrove v. N.Y.C. Dep't of Educ.*,
 2011 U.S. Dist. LEXIS 12065 (E.D.N.Y. Feb. 4, 2011)........................................11

*Olim v. Wakinekoma*,
 461 U.S. 238 (1983)............................................................................................12

*Oneida Indian Nation of N.Y. v. Madison Cnty*,
 665 F.3d 408 (2d Cir. 2011)................................................................................10

*Paterno v. City of New York*,
 2018 U.S. Dist. LEXIS 128175 (S.D.N.Y. July 31, 2018) ....................................13

*Perez v. City of New York*,
 41 A.D.3d 378 (1st Dep't 2007), *app. den.*, 10 N.Y.3d 708 (2008) .......................16

*Perez v. Metro. Transp. Auth.*,
 2012 U.S. Dist. LEXIS 74123 (S.D.N.Y. May 29, 2012).......................................11

*Reynolds v. Barrett*,
 685 F.3d 193 (2d Cir. 2012)................................................................................17

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
 42 N.Y.2d 369 (1977) .........................................................................................23

*Sadallah v. City of Utica*,
 383 F.3d 34 (2d Cir. 2004)..................................................................................12

*Sandals Resort Int'l Ltd. v. Google, Inc.*,
 86 A.D.3d 32 (1st Dep't 2011) ...........................................................................23

*Savoy of Newburgh, Inc. v. City of Newburgh*,
 242 F. App'x 716 (2d Cir. 2007) ........................................................................22

*Segal v. City of New York*,
 459 F.3d 207 (2006)...........................................................................12, 13, 14, 17

*Sheridan v. Crisona*,
   14 N.Y.2d 108 (1964) ......................................................................................................20

*Sotomayor v. City of New York*,
   862 F. Supp. 2d 226 (E.D.N.Y. 2012), *aff'd,* 713 F.3d 163 (2d Cir. 2013) ..........................16

*Spano v. Cnty. of Onondaga*,
   170 A.D.2d 974, 565 N.Y.S.2d 665 (4th Dep't 1991) ...........................................................18

*Spring v. Cnty of Monroe*,
   169 A.D.3d 1384 (4th Dep't 2019) ...................................................................................19, 21

*Stephenson v. PricewaterhouseCoopers, Ltd. Liab. P'ship*,
   482 F. App'x 618 (2d Cir. 2012) ......................................................................................24

*Stukuls v. State of N.Y.*,
   42 N.Y.2d 272 (1977) ......................................................................................................20

*Thorsen v. Sons of Norway*,
   996 F. Supp. 2d 143 (E.D.N.Y. 2014) ................................................................................19

*Vega v. Lantz*,
   596 F.3d 77 (2d Cir. 2010) ...............................................................................................12

*Velez v. Levy*,
   401 F.3d 75 (2d Cir. 2005) ...............................................................................................12

*Weiss v. Inc. Vill. of Sag Harbor*,
   762 F. Supp. 2d 560 (E.D.N.Y. 2011) ..................................................................................2

*Williams v. City of N.Y.*,
   2014 U.S. Dist. LEXIS 49837 (S.D.N.Y. Mar. 26, 2014), *aff'd,* 602 Fed.
   Appx. 28 (2d Cir. 2015)...................................................................................................16

*Wolfe v. City of Rochester*,
   2016 U.S. Dist. LEXIS 139210 (W.D.N.Y. Oct. 6, 2016)....................................................26

*Zahra v. Town of Southfield*,
   48 F.3d 674 (2d Cir. 1995)...............................................................................................10

**Statutes**

42 U.S.C. § 1981 ...................................................................................................................16

42 U.S.C. §1983...............................................................................................................17, 18

N.Y. Ed. Law § 2590-g(2) ......................................................................................................16

N.Y. Ed. Law § 3813(1)...........................................................................................................18

N.Y. Gen. Mun. Law §§ 50-e, 50-i ................................................................................................18

**Other Authorities**

Chancellors Regulation A-420 ........................................................................................................28

Fed. R. Civ. P. 9(b) ........................................................................................................................24

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................2

N.Y. C.P.L.R. Art. 78 ........................................................................................................13, 14, 27

Stephanie Merry, *Gooding's Good, But That's Not Good Enough*, Washington
    Post, June 5, 2015 .......................................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff, Patricia Cummings, is a former probationary social studies teacher for defendant New York City Department of Education ("DOE") who taught at The William W. Niles School – Middle School 118 ("X118") in the Bronx.  In January 2018, she taught her 7th grade social studies classes a lesson on the Middle Passage, which included a non-approved clip from an R-rated movie and a demonstration of the conditions on the slave ship.  As part of the lesson, plaintiff had several of the students act as the slaves.  In February 2018, the *Daily News* published an article about plaintiff's lesson that included allegations by a student that plaintiff put her foot on another student's back during the slave ship demonstration and asked the student "How does it feel?"  Defendant Mayor de Blasio was asked about this article at a press conference, and he responded that the allegation was under investigation.  Another newspaper reported on comments made by Councilmember Daniel Dromm and former Councilmember Jumaane Williams.[1]   The DOE's Office of Special Investigations ("OSI[2]") investigated the allegations.  OSI found that the corporal punishment allegations were unsubstantiated, but that plaintiff acted with "poor judgment."  The DOE terminated plaintiff's probationary employment in October 2018 based upon the outcome of the investigation as well as her overall poor performance as a teacher.

In her rambling, prolix, 63-page and 209-paragraph Complaint against 23 different defendants, most of whom have nothing to do with one another, plaintiff asserts claims under the United States and New York State Constitutions for discrimination and violation of her right to due process, as well as state law claims for fraud, defamation, breach of contract,

---

[1] After plaintiff filed her lawsuit, Councilmember Williams became the Public Advocate.

[2] OSI is misnamed in this action.  OSI is the New York City Department of Education's Office of Special Investigations and is part of the DOE.

negligence, intentional infliction of emotional distress and negligent infliction of emotional distress. Essentially, plaintiff alleges that the City, Mayor de Blasio, Councilmember Dromm and Councilmember Williams ("City Defendants") defamed her. She also alleges that the DOE, OSI, Guilia Cox, the Principal of X118, and Courtney Ware, an Assistant Principal of X118 ("DOE Defendants"), discriminated against her because she is Caucasian and denied her due process when the DOE terminated her probationary employment. As set forth below, the claims against City Defendants and DOE Defendants lack any basis, are frivolous, and should be dismissed.

## FACTUAL BACKGROUND[3]

Plaintiff, Patricia Cummings, a Caucasian female, was a probationary social studies teacher employed by the DOE at X118, which is "a school that has a significant minority population." Compl. ¶¶ 16, 88, 150, 175, 179, 182. The DOE terminated plaintiff's probationary employment on October 18, 2018. Compl. ¶ 175.

## A.     PLAINTIFF'S 7TH GRADE LESSON ON THE MIDDLE PASSAGE

On or about January 9, 2018, plaintiff taught her 7th grade social studies class 408 a lesson on the Middle Passage. Compl. ¶ 52. As part of her lesson, plaintiff showed a clip from an R-rated movie entitled *Freedom*. Compl. ¶ 53; *see also* Stephanie Merry, *Gooding's Good, But That's Not Good Enough*, Washington Post, June 5, 2015, at T27. As described in the *Washington Post*, *Freedom* is a "melodramatic religious drama," which in part depicts a slave

---

[3] Plaintiff's allegations are assumed to be true for purposes of this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) only. All exhibits referred to herein are attached to the Declaration of Aliza J. Balog ("Balog Decl."). The Court may consider all of these documents on a motion to dismiss. All documents attached to defendants' motion are "integral" to the Complaint, were in plaintiff's possession and relied upon in framing the Complaint, and/or are public documents subject to judicial notice. *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

ship where the ship's captain "sees countless awful sights, from nearly naked people chained together in the tightest quarters to a woman being branded with a hot iron." *Id*.; *see also id*. (noting that it "[c]ontains violence and disturbing images."). According to plaintiff, some students "were mocking the contents of the video," so she had four students "sit very close together for a demonstration to exhibit the cramped conditions on the ship." Compl. ¶ 53. Plaintiff did not seek approval to show the video prior to teaching the lesson. *See* Balog Decl. Ex. A, Redacted OSI Investigative Report, dated July 24, 2018 ("OSI Report"), at 10. Plaintiff taught the same lesson to her social studies 407 students as well. *Id*. at 7.

## B.    THE DOE INVESTIGATION, DAILY NEWS ARTICLE, & PLAINTIFF'S REASSIGNMENT FROM X118

On January 11, 2018, plaintiff learned that defendant Ware was taking students' statements about her Middle Passage lesson. Compl. ¶ 166. On January 16, 2018, plaintiff received a letter from defendant Cox stating that she was the subject of a disciplinary meeting to take place on January 18, 2018. Compl. ¶¶ 55, 166. The letter made no mention of an allegation of corporal punishment. Compl. ¶ 166. There is no allegation in the Complaint or the OSI Report of defendant Ware having had knowledge of the corporal punishment allegations before January 16. The day before the meeting, on January 17, 2018, a parent of one of the students in plaintiff's class 408 filed a written complaint about the lesson. *See* Compl. ¶53; Balog Decl. Ex. A, OSI Report at 6.   According to plaintiff, the parent claimed that during the social studies class, "the Plaintiff instructed Student A to get on the floor and the Plaintiff 'put her knee into her back' and 'pushed down' asking if [the student] felt pain." Compl. ¶ 53.

On January 18, 2018, plaintiff met with defendant Cox and was also informed of the January 17 parent complaint. Compl. ¶ 56. According to plaintiff, Cox did not raise the issue of corporal punishment at that meeting. Compl. ¶ 166. Plaintiff asked Cox to speak with

another teacher, Ralph Hudson, who is African-American, who was on his prep period in room 408 while plaintiff taught the lesson. Compl. ¶ 54. Defendant Cox refused to speak with Hudson. Compl. ¶¶ 56, 169. That same day, defendant Cox reported the parent complaint to OSI. Balog Decl. Ex. A, OSI Report at 1.[4] Plaintiff was removed from teaching class 408 for three days – from January 23 through January 25, 2018. Compl. ¶¶ 57, 166.

On February 1, 2018, two students reported to plaintiff that on January 31, a "white man" had been walking around the school campus asking questions about plaintiff, including whether plaintiff had ever walked on their backs. Compl. ¶¶ 68, 167. There are no allegations in the Complaint that plaintiff ever told any of the DOE Defendants about this conversation. At the end of the school day on February 1, Ben Chapman, a reporter for the *Daily News*, approached the plaintiff on school property. Compl. ¶¶ 65, 167. Plaintiff claims that "Defendants did nothing to prevent Mr. Chapman from being present on school property," but the Complaint does not contain any allegations that that the DOE Defendants knew that Mr. Chapman was on school property. Compl. ¶ 167. After being approached, plaintiff immediately went to speak with an Assistant Principal. Compl. ¶ 65. That Assistant Principal called defendant Cox, who personally informed the plaintiff that she had called the Chancellor's division that handles media issues and had been informed that the *Daily News* would be running an article the following day. Compl. ¶ 65.

At 5:59 pm on February 1, 2018, defendant Cox left plaintiff a voicemail advising her that she was being reassigned to 100 Gold Street and that she was the subject of an investigation by OSI. Compl. ¶¶ 66, 170. Three minutes later, plaintiff received an email

---

[4] The Complaint curiously claims that this did not happen until *February* 18. *See* Compl. ¶ 166. This appears to be a typo as the OSI Report says it occurred a month earlier.

informing her of her reassignment.  Compl. ¶¶ 66, 170.  Plaintiff alleges that others have referred to 100 Gold Street as "teacher jail."  Compl. ¶ 66.  At some point, plaintiff was reassigned to the Queens South Reassignment Center, which she describes as "a small, uncomfortable room with bars on the windows and 15+ teachers crammed together . . . ."  Compl. ¶ 170.

On February 2, 2018, the *Daily News* published an article about plaintiff and a student's allegations that plaintiff put her foot on another student's back during the slavery demonstration and asked the student "How does it feel?"  Compl. Ex. B.  According to plaintiff, the student whose allegations were the subject of the *Daily News* article was a different student from the one whose mother complained to X118.  Compl. ¶ 172.  That morning, defendant Cox sent an e-mail to the entire school staff informing them that the Superintendent had advised the school to expect a large media presence.  Compl. ¶ 67.  She also sent a letter to parents "expressing the school's concern over the reported accusation; informing them that it is being investigated; and reassuring the parents that [the plaintiff had] . . . 'been assigned away from students.'"  Compl. ¶¶ 70, 171.  Defendant Cox also advised the parents that she was "working with staff to review the Department's Non-Discrimination Policy to further diversity and sensitivity awareness in the workplace.'"  Compl. ¶ 70.  Former Chancellor Carmen Fariña also stated on ABC News that she did not "want to make any suppositions" as the allegations in the news article were "under investigation," and she stated that the DOE had to "wait for the investigation to be complete."  Compl. ¶ 93.

On March 9, 2018, plaintiff received a 48-hour notice advising her that OSI was conducting an investigation into an allegation of employee misconduct that had been filed against her.  Compl. ¶ 71.  Confusingly, plaintiff also alleges that she was never advised of the

OSI investigation, although elsewhere in the complaint she alleges that she was informed of the investigation on February 1.  Compl. ¶¶ 66, 166.  Plaintiff subsequently met with the OSI investigator on March 15, 2018.  Compl. ¶ 71.  Plaintiff claims that four days later, the OSI investigator informed her that she would be returning to X118.  Compl. ¶ 72.  She further alleges that she was advised by some unidentified person on April 19, 2018, that the OSI investigation "exonerated her," and she would be returned to the classroom."  Compl. ¶ 173. Some unknown person at some unknown point also advised plaintiff that she should have been returned to X118 on April 23, 2018.  Compl. ¶ 183.

OSI issued its report on July 24, 2018.  Compl. ¶ 73; Balog Decl. Ex. A, OSI Report.  Plaintiff's union notified her of the report on July 26, 2018.  Compl. ¶ 73.  Plaintiff alleges that she did not review the OSI Report until September 6, 2018.  Compl. ¶ 174.  The OSI Report stated that the "allegation that [plaintiff] used corporal punishment against Student A by pushing her knee into her back during a classroom demonstration has not been corroborated and is unsubstantiated."  Balog Decl. Ex. A, OSI Report at 11 (emphasis omitted).  The report also concluded that "Ms. Cummings acted with poor judgment in conducting a lesson that inadequately incorporated the New York City DOE social studies curriculum and guidance for this topic."  *Id*.  It also stated that plaintiff's "lessons on the Middle Passage . . . significantly diverged from best-practices.  Specifically, the DOE does not ever include or encourage re-enactments of historical events where students take on roles of victimized people."  *Id*.  Plaintiff alleges that this finding is in error because in her opinion, her lesson was in accordance with New York State standards.  Compl. ¶ 174.  OSI recommended that the report be "referred to Principal Cox for her review and for her to take appropriate disciplinary action against Patricia Cummings, teacher."  Balog Decl. Ex. A, OSI Report at 11.

6

In the OSI Report, the student's parent who reported the allegation to X118 refused to permit her child to be interviewed as part of the OSI investigation.  Compl. ¶ 174. Plaintiff asserts that the failure of the parent to permit her child to be interviewed by the OSI investigator is "a form of blatant racism" and speculates, without any basis, that "Defendants may have offered the Plaintiff, parents, and students a lie detector examination . . . ."  Compl. ¶ 174.  Plaintiff also alleges that the OSI Report "demonstrated that she had not engaged in acts of racism and otherwise engaged in racist misconduct," Compl. ¶ 97.  But, the OSI Report does not contain any such statement, and instead OSI recommended that plaintiff be provided "with appropriate training to ensure her lesson plans are developed in a manner that takes into account potential social and cultural sensitivities".  *See* Balog Decl. Ex. A, OSI Report, at 12.

## C.   DOE'S TERMINATION OF PLAINTIFF'S EMPLOYMENT

On August 22, 2018, defendant Cox e-mailed plaintiff and informed her that she was scheduled to teach at X118 in September.  Compl. ¶ 74.  Plaintiff returned to X118 on September 4, 2018.  Compl. ¶ 77.  Early in the day, she met with Cox and received her program schedule and a 48- hour notice to review the OSI Report.  Compl. ¶ 77.  She then went to a meeting.  Compl. ¶ 77.  At the meeting, Cox's secretary approached plaintiff and informed her that Cox needed plaintiff to sign a reassignment notice pending employee discipline.  Compl. ¶ 78.  Plaintiff signed the reassignment notice and left the building.  Compl. ¶¶ 78-79.

By letter dated September 17, 2018, plaintiff was informed that on October 18, 2018, the District 10 Superintendent would be reviewing and considering whether plaintiff's probationary services would continue.  Compl. ¶ 179.  On September 28, 2018, the *Daily News* reported that a DOE spokesperson told it that the DOE had "begun the process of firing Ms. Cummings based upon an investigation of this unacceptable behavior and her performance as an

educator." Compl. ¶ 179. On October 18, 2018, the DOE terminated plaintiff's probationary

employment. Compl. ¶¶ 80, 175. Plaintiff claims that this violated her "due process and civil

rights" because the DOE stated that "the process to fire the Plaintiff had begun on September 28,

2018, when [the Superintendent] had not yet completed her review and consideration," although

the referral to the Superintendent is the process by which the DOE determines to discontinue

probationary employment. Compl. ¶ 179.

Plaintiff was told by an unidentified colleague at some point in time that "what

occurred was the result of 'having a white teacher, teach events of black history to black

students.'" Compl. ¶ 182 (emphasis omitted). It was further stated to her by some unknown

person that "only black teachers should be allowed to teach about events of black history to black

students" and that "[a] black teacher could have taught the very same lesson, and there would not

have been a single complaint from any student's parent." Compl. ¶ 182 (emphasis omitted).

## D. THE STATEMENTS OF MAYOR DE BLASIO, COUNCILMEMBER WILLIAMS, AND COUNCILMEMBER DROMM

On February 6, 2018, four days after the *Daily News* published the article about

plaintiff and the allegations by a student, Mayor de Blasio held a press conference along with the

Police Commissioner regarding crime statistics. Compl. ¶ 102; *see also* Balog Decl. Ex. B,

Transcript of February 6, 2018 Press Conference ("Feb. 6, 2018 Tr."). At the end of the

conference, someone asked the Mayor about the *Daily News* article and asked for his "reaction to

the fact that this happened and also there's some parents who will be protesting today and

seeking some cultural sensitivity training in schools. . . . ." Balog Decl. Ex. B, Feb. 6, 2018 Tr.

at 14. Plaintiff alleges that Mayor de Blasio made the following statement:

> "It's not acceptable. It's not even close," de Blasio said when
> asked about the allegations. "I don't know any teacher in their right
> mind who would do something like that . . . we're doing a full

8

> investigation of that. That makes no sense. It is unfair to the kids.
> It's insensitive."  "But I will say, this has not been a widespread
> problem in terms of any type of incident like that, thank God, but
> we will keep deepening our implicit type training, and ways of
> helping our teachers to think about these issues better."

Compl. ¶ 102; *see also* Balog Decl. Ex. B, Feb. 6 2018 Tr. at 14 (setting forth the complete

statement by Mayor de Blasio).  Although on February 6, 2018, OSI had not yet completed the

investigation and plaintiff had not yet been interviewed by OSI, plaintiff alleges that Mayor de

Blasio "knew or should have known" when he answered the question at the conference that what

was reported in the *Daily News* was false based on the investigation . . . ."  Compl. ¶ 103.  On

April 26, 2018, Mayor de Blasio set aside $23 million for "anti-bias training and the creation of

the Office of Culturally Responsive Education."  Compl. ¶ 104. Plaintiff further alleges that

Mayor de Blasio "defamed" her when on some unspecified date he "accepted" petitions from

defendant Coalition of Educational Justice.  Compl. ¶ 105.

On February 9, 2018, the *New York Amsterdam News* published an article.

Compl. ¶¶ 114-115.  The article purportedly attributed the following statement to

Councilmember Dromm:

> "Educators teaching in a city as diverse as ours should be given
> cultural competency training," said Daniel Dromm, NYC Council
> Finance Committee chair. "This is the only way to avoid similar
> traumatic experiences like what happened in the Bronx."

The article also purportedly attributed the following statement to Councilmember Williams:

> "There is a clear need for the administration to be more proactive
> in mandating Culturally Responsive Education in our schools,"
> said Councilmember Jumaane Williams. "We should not have to
> wait for grotesque events of cultural insensitivity to mar our
> classrooms in order to spur action, and I sincerely hope we don't
> have to wait for the next one."

Plaintiff alleges that both Councilmembers Dromm and Williams "exhibited flagrant disregard as to whether the accusations made against the Plaintiff were actually true . . ." when they spoke. Compl. ¶¶ 114-15.

**E.     PLAINTIFF'S NOTICE OF CLAIM & STATE COURT SUMMONS**

On October 3, 2018, the New York City Comptroller's Office received a Notice of Claim as to the City of New York, DOE and OSI.  *See* Balog Decl. Ex. C, Notice of Claim. On January 10, 2019, plaintiff filed a Summons with Notice in New York State Supreme Court. On March 22, 2019, defendant *Daily News* removed this case to this Court and the DOE Defendants and City Defendants consented.  On May 17, 2019, plaintiff filed her Complaint.

<u>**ARGUMENT**</u>

**POINT I**

**PLAINTIFF'S     CONSTITUTIONAL     LAW CLAIMS FAIL.**

Plaintiff claims that the actions of the defendants violated her rights under the Fourteenth, First, Second, Fourth, Fifth, Sixth, Seventh and Eighth Amendments to the Constitution.  *See* Compl, ¶¶ 1, 165-187.  As discussed below, these claims should be dismissed.[5]

**A.     PLAINTIFF'S DUE PROCESS CLAIMS FAIL**

When analyzing procedural due process claims, the threshold issue is whether the plaintiff possessed a valid property or liberty interest.  *Oneida Indian Nation of N.Y. v. Madison*

---

[5] The claims brought pursuant to the New York State Constitution should be dismissed for the additional reason that there is no private right of action where an alternative avenue of redress, namely federal constitutional claims, could be available to plaintiffs.  *See Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83 (2001).

*Cnty*, 665 F.3d 408, 427-28 (2d Cir. 2011); *Zahra v. Town of Southfield*, 48 F.3d 674, 689 (2d Cir. 1995).  To the extent that plaintiff claims that she was deprived of a property interest by the DOE Defendants and City, that claim fails because as a probationary teacher, she did not possess a property interest in her position.  To the extent that she claims she was deprived of a liberty interest, that claim fails because she cannot establish the elements of a stigma-plus claim.

       **1.**     **No Deprivation of a Property Interest**

       Plaintiff had no property interest in her continued employment as she was a probationary teacher.  It is well-settled that a probationary employee has no property interest in her job.  *Finley v. Giacobbe*, 79 F.3d 1285, 1292 (2d Cir. 1996).  Even before termination of her employment, plaintiff also had no property interest in remaining at X118 rather than being transferred, with full salary, to a reassignment center.  Courts have held that "being placed in a reassignment center with full salary does not implicate a property interest."  *Norgrove v. N.Y.C. Dep't of Educ.*, 2011 U.S. Dist. LEXIS 12065, at *11 (E.D.N.Y. Feb. 4, 2011).

       Plaintiff also had no property interest in a specific procedure for the investigation into the allegations of corporal punishment.  That plaintiff believes that the investigation and her transfer to the reassignment center did not occur in accord with certain DOE procedures does not amount to a due process violation.  In *Perez v. Metro. Transp. Auth.*, 2012 U.S. Dist. LEXIS 74123 (S.D.N.Y. May 29, 2012), the plaintiff claimed that "she was deprived" of "the expectation that she would be treated in accordance with the applicable agency policy and procedures."  *Id*. at *23.  The court dismissed plaintiff's due process claim because "[p]laintiff cannot claim a property interest in the MTA's policy and procedures."  *Id*.; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Olim v. Wakinekoma*, 461 U.S. 238, 250 (1983).

2.      **No Deprivation of a Liberty Interest**

Where the liberty interest allegedly subjected to deprivation without due process is reputational in nature, as plaintiff asserts here, a plaintiff must establish the elements of what is referred to as a "stigma-plus" claim.  To prevail on a "stigma-plus" claim, plaintiff must show that (1) defendants made false and stigmatizing statements about her – statements that call into question her good name, reputation, honor or integrity; (2) a tangible and material state-imposed burden in addition to the stigmatizing statement, and (3) the false and stigmatizing statements were made public, concurrently with, or in close proximity to the tangible and material state-imposed burden.  *Segal v. City of New York*, 459 F.3d 207, 212 (2006); *see also Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010); *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).  Finally, "a stigma-plus claim [only] enforces a limited but important right:  the right to be heard . . . [at a] name-clearing hearing."  *Segal*, 459 F.3d at 213.  Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation such a fashion to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" satisfies the stigma requirement.  *Segal*, 459 F.3d at 212 (citation omitted).  "Statement[s] that an employee poorly performed her duties or acted in an improper manner, or that describe behavior or actions that are within the employee's power to correct, do not generally qualify as stigma for constitutional purposes."  *Adams v. New York State Educ. Dep't,* 732 F. Supp. 2d 420, 449 (S.D.N.Y. 2010) (quotations and citations omitted).

Here, plaintiff fails to plead any facts alleging the publication by the City or DOE Defendants of an arguably false statement injurious to her reputation at the time of her termination.  The only statement that plaintiff alleges was made by the DOE to the public and

12

made even close in time to the termination of her employment is that on September 28, 2018, when a DOE spokesperson stated to the *Daily News* that the DOE had "begun the process of firing Ms. Cummings based upon an investigation of this unacceptable behavior and her performance as an educator."  Compl. ¶ 179.  There is no plausible allegation that this statement is false.  *See Paterno v. City of New York*, 2018 U.S. Dist. LEXIS 128175 at *13-14 (S.D.N.Y. July 31, 2018) (granting motion to dismiss concerning statements by DOT that they took "aggressive action" to "address concerns raised by the complaints" and that DOT removed the plaintiff because the statements were true).  As alleged in the Complaint, the DOE began the process of terminating plaintiff on September 17 by sending plaintiff her 30-day notice.  *See* Compl. ¶ 180.  Further, plaintiff does not dispute that the stated reasons by the DOE for its determination to begin the termination process – the "unacceptable behavior" uncovered by the OSI investigation and its assessment of her "performance as an educator" – was also not the basis for the proceedings.  Accordingly, plaintiff cannot establish the first or third elements of a stigma-plus claim.

       The second ground for dismissal of plaintiff's stigma-plus claim is that an adequate state remedy was available to her in the form of an Article 78 proceeding: "it is not enough that the plaintiff has demonstrated the deprivation of her liberty interest; in order to bring successful stigma-plus claim, the plaintiff must also demonstrate that her liberty was deprived without due process of law.  Stated differently, the availability of adequate process defeats a stigma-plus claim."  *Segal*, 549 F.3d. at 213.  In a case "involving an at-will government employee, the availability of an adequate, reasonably prompt post termination name-clearing hearing is sufficient to defeat a stigma-plus claim . . . ."  *Id.* at 214.  Courts in the Second Circuit have held repeatedly that a proceeding under Article 78 of the CPLR provides such a remedy.

*Id.*; *Anemone v. Metro. Trans. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011); *Hughes v. City of New York,* 197 F. Supp. 3d 467, 477-78 (E.D.N.Y. 2016), *aff'd in part and rev'd in part*, 680 F. Appx. 8 (2d Cir. 2017). That plaintiff chose to not pursue an Article 78 proceeding does not render that remedy inadequate. Accordingly, the Court should dismiss her claim that she was deprived of liberty interest without due process.

**B.     PLAINTIFF'S EQUAL PROTECTION CLAIM SHOULD BE DISMISSED**

The heading for paragraphs 165 through 187 indicates that plaintiff is bringing a claim for "violation of Civil Rights and Discrimination," against the DOE Defendants and the City. Presumably plaintiff is attempting to assert a claim under the Equal Protection Clause. "The Equal Protection Clause prohibits, *inter alia*, purposeful employment discrimination on the basis of race." *Batista v. DeGennaro*, 13 Civ. 1099 (DAB), 2015 U.S. Dist. LEXIS 44022, at *8 (S.D.N.Y. Mar. 31, 2015). Here, it appears that plaintiff asserts that the DOE Defendants and City discriminated against her because she is Caucasian. That claim should be dismissed.

Plaintiff's race discrimination claim fails because she does not plead anything more than conclusory allegations. To state such a claim, plaintiff must plead a "connection between the alleged negative treatment and h[is] . . . race . . . " in order to adequately plead discrimination claims. *Johnson v. Andy Frain Servs.*, 2014 U.S. Dist. LEXIS 84430 at *7 (E.D.N.Y. June 19, 2014), *aff'd* 638 Fed. Appx. 68 (2d Cir. 2016). Entirely absent from the Complaint are any facts which might conceivably give rise to a plausible inference of race discrimination. Nowhere in the Complaint has plaintiff set forth any allegations, as she must, from which one could adduce that there were non-Caucasian employees who were treated better than her, let alone that they were "similarly situated." *Id., Humphries v. City Univ. of N.Y.*, 2013 U.S. Dist. LEXIS 169086 at *21 (S.D.N.Y. Nov. 26, 2013).

To be sure, the Complaint uses the words "discrimination" and "racism." Compl. ¶¶ 85, 97, 168, 174, 181, 182.  But there is no detail to these claims.  Plaintiff merely summarily alleges that bad things happened to her because she is Caucasian.  *See* Compl. ¶ 150. And, that various statements by a "colleague" and an unidentified individual, who is not even identified as a DOE employee, "evidence the reverse discrimination employed by the Defendants in the way that the Plaintiff was treated, as a Caucasian teacher, teaching in a school that has a significant minority population." Compl. ¶ 182.  Such allegations are insufficient to state a claim.  *See Forde v. Empire State Coll.*, 2011 U.S. Dist. LEXIS 105767 at *9 (S.D.N.Y. Sep. 19, 2011).

## C.     PLAINTIFF'S OTHER CONSTITUTIONAL LAW CLAIMS FAIL

In ¶1 of the Complaint, plaintiff mentions the First, Second, Fifth, Sixth, Seventh and Eighth Amendments to the United States Constitution.   These amendments are not mentioned anywhere else in the Complaint.  It is unclear if plaintiff also intended to assert claims pursuant to these Amendments.  Assuming that she does, the Complaint fails to state a claim.

The First Amendment concerns the right to free speech.  There are no allegations in the Complaint that either the DOE Defendants or the City Defendants infringed upon plaintiff's right to free speech.  The Second Amendment concerns the right to bear arms.  There are no allegations in the Complaint that defendants interfered with her right to possess a gun. The Fifth Amendment applies to actions by the federal government, but not by the City or DOE. The Seventh Amendment concerns the right to a jury trial in certain circumstances.  That is also irrelevant.  Likewise, the Sixth and Eighth Amendments are inapplicable as this is a civil action. *See Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 263 (1989); *Ingraham v. Wright*, 430 U.S. 65, 6641 (1977); *Madera v. Board of Education*, 386 F.2d 778, 780 (2d Cir. 1967).

**D.    THE CITY OF NEW YORK IS NOT THE PROPER PARTY FOR THE CONSTITUTIONAL CLAIMS**

All of plaintiff's constitutional claims concern her employment by the DOE. Thus, these claims asserted against the City of New York should be dismissed because the City and DOE are separate legal entities and the City is not liable for the actions of the DOE or its employees.  *See* N.Y. Ed. Law § 2590-g(2).  "[T]he City is not liable for the actions of the NYCDOE or its employees absent some action by the City itself."  *Williams v. City of N.Y.*, 2014 U.S. Dist. LEXIS 49837 at *23 (S.D.N.Y. Mar. 26, 2014), *aff'd,* 602 Fed. Appx. 28 (2d Cir. 2015).  "Courts have consistently rejected the argument that teachers may sue the City on the basis of their employment by the NYCDOE."  *Id*.; *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012), *aff'd,* 713 F.3d 163 (2d Cir. 2013); *Falchenberg v. N.Y.C. Dep't of Educ.*, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005).  Changes in the structure of DOE have not altered this conclusion.  *See Perez v. City of New York*, 41 A.D.3d 378, 379 (1st Dep't 2007), *app. den.*, 10 N.Y.3d 708 (2008).

**E.    NO PRIVATE RIGHT OF ACTION UNDER §1981**

In ¶1, plaintiff alleges that jurisdiction is proper in this case pursuant to 42 U.S.C. §1981.  To the extent that plaintiff asserts a race discrimination claim under §1981, that claim should be dismissed because §1981 does not provide a separate private right of action against state actors (and in this case, all of the City Defendants and DOE Defendants are state actors).  *Duplan v. City of New York*, 888 F.3d 612, 619-21 (2d Cir. 2018); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 735 (1989).

**F.    NO *MONELL* CLAIM**

In ¶181, plaintiff appears to assert a *Monell* claim and concludes that unidentified "Defendants" have a "pattern of discrimination against Caucasian teachers."  To the extent

plaintiff intended to assert this as a separate claim, it should be dismissed.  *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).  Moreover, as to the individual defendants, the Second Circuit has declined to hold individual defendants liable under §1983 under a pattern and practice theory.  *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012).

In addition, plaintiff's §1983 claims against the DOE and the City should be dismissed because she fails to plead facts supporting her conclusory *Monell* allegations.  *See Monell v. Dept' of Sc. Servs.*, 436 U.S. 658, 694 (1978).  A policy, practice or custom is an essential element of a § 1983 claim.  *Id*.  "The plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (quote in original).  Moreover, a municipality may not be held liable under § 1983 where no constitutional violation has occurred.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Plaintiff's Complaint is entirely devoid of any factual allegations to support her §1983 claims against the DOE and the City.  Even if plaintiff had alleged such a violation, she does not plausibly allege that a municipal policy or custom caused the violation of her constitutional rights.  The "mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds* by *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Nor has plaintiff alleged that there was a policy of the DOE or the City which

17

caused the alleged deprivation of her alleged constitutional rights. Accordingly, her §1983 claims against the DOE and the City should be dismissed.

<div align="center">

**POINT II**

**PLAINTIFF'S STATE LAW CLAIMS FAIL.**

</div>

**A.     FAILURE TO FILE A TIMELY NOTICE OF CLAIM**

All of plaintiff's state law claims asserted against the DOE Defendants and all of the tort claims asserted against the City, Mayor and Councilmembers Dromm and Williams that accrued before July 3, 2018, 90 days before the Comptroller's office received her notice of claim on October 3, 2018, are barred.[6]  *See* N.Y. Ed. Law § 3813(1); N.Y. Gen. Mun. Law §§ 50-e, 50-i.   In addition, as plaintiff's employment was not terminated until *after* she filed her notice of claim and plaintiff did not file another or amended notice of claim within 90 days after her termination, claims concerning her termination are also time-barred.   *Spano v. Cnty. of Onondaga*, 170 A.D.2d 974, 565 N.Y.S.2d 665, 666 (4th Dep't 1991).

Even if plaintiff had filed a timely notice of claim, it would still not be sufficient to support her breach of contract or fraud claim against the DOE Defendants as there is no mention of a breach of contract or fraud claim against the DOE Defendants in the notice of claim.   It would also not be sufficient to support the defamation claims against the City, Mayor and Councilmembers Dromm and Williams as the notice does not set forth the time when, the place where and the manner in which the claim arose.   *See Moore v. N.Y.C. Dep't of Educ.*, 2004 U.S. Dist. LEXIS 5338, at *8-9 (S.D.N.Y. Mar. 31, 2004) (dismissing defamation claims).

---

[6] Plaintiff claims that she served the notice of claim on September 26, 2018. Compl. ¶ 6.  This date appears to be erroneous as even the self-addressed, stamped envelope enclosed with the notice of claim contains the date of September 27, 2018.   *See* Balog Decl. Ex. C, Notice of Claim.  Regardless, the analysis as to what claims are barred would not change if the Court were to use one of these dates.

## B.     NO TORT CLAIMS

Even if plaintiff had filed a timely notice of claim, all of her tort claims should still be dismissed as she has failed to plead a plausible claim.

### 1.     <u>Plaintiff's Defamation Claims Fail</u>

Plaintiff asserts defamation claims against the City, Mayor de Blasio and Councilmembers Williams and Dromm.  *See* Compl. ¶¶ 82-157.  The elements of a defamation claim in New York are that the defendant made: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault, amounting to at least negligence on the part of the publisher; and (4) that either constitutes defamation *per se* or caused special damages*." Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173 (E.D.N.Y. 2014); *Dillon v. City of New York*, 261 A.D.2d 34, 37-38 (1st Dep't 1999).[7]

#### a.     <u>The claim against Mayor de Blasio fails</u>

The statements by Mayor de Blasio are protected by an absolute privilege.  "The absolute privilege defense affords complete immunity from liability for defamation to 'an official who is a principal executive of State or local government' . . . with respect to statements made during the discharge of those responsibilities about matters which come within the ambit of those duties."  *Spring v. Cnty of Monroe*, 169 A.D.3d 1384, 1385 (4th Dep't 2019) (citation omitted).  "[A]n absolute privilege, a veritable immunity, is impervious to proof, and therefore to a charge, of malice."  *Stukuls v. State of N.Y.*, 42 N.Y.2d 272, 275 (1977).  Thus, Mayor de Blasio is protected by an absolute privilege from plaintiff's defamation claim.

---

[7] Plaintiff alleges both libel and slander.  However, there are no allegations that City Defendants made anything other than oral statements.  Thus, the libel claims should be dismissed.

Over 40 years ago, the New York Court of Appeals addressed an analogous situation to the one at hand in *Lombardo v. Stoke*, 18 N.Y.2d 394 (1966). In *Lombardo*, the President of Queens College, in conjunction with the Board of Higher Education, made a public statement about charges by some former faculty members that the appointment and promotional process at Queens College was tainted with religious bias, which had been widely reported on by the press. *Id*. at 397. In the statement, among other things, he stated the belief that these former faculty members had advanced the charges of religious discrimination to explain their lack of academic success and to obtain promotion. *Id*. at 398. The Court ruled that this statement was protected by absolute privilege. It reasoned that "the members of the defendant Board of Higher Education . . . should be free to report to the public on appropriate occasions 'without fear of reprisal by civil suit for damages.'" *Id*. at 400. This was particularly so where "at the present time, when so much attention has been directed toward eliminating bias and prejudice in the administration of our school systems . . . ." *Id*.; *see also Sheridan v. Crisona*, 14 N.Y.2d 108 (1964) (report written by Queens Borough President, and released to the press, containing statements that a city appraiser was incompetent was protected by absolute privilege); *Barr v. Matteo*, 360 U.S. 564, 574-75 (1959) (a press release issued by the Director of the Office of Rent Stabilization, announcing the suspension of agency employees and implying the employees were responsible for misdeeds were protected by absolute privilege).

Here, Mayor de Blasio, who plaintiff alleges has control over the DOE, *see* Compl. ¶¶ 20, 101, responded to a question at a news conference he held as part of his duties as the Mayor about the allegations in the *Daily News* article. Such statements are absolutely privileged. *See Spring v. County of Monroe*, 169 A.D.3d 1384, 1385-86 (4th Dep't 2019) (holding that statements by county executive about plaintiff's termination to the press were

20

absolutely privileged "because the investigation and the underlying actions of plaintiff became a matter of public attention and controversy . . . ."); *Cosme v. Town of Islip*, 102 A.D.2d 717, (1st Dep't 1984) (statement by chief executive of town at a town meeting in response to questions by organizations by those present at the meeting were protected by absolute privilege); *Energy Brands, Inc. v. Cnty. of Nassau*, 266 A.D.2d 501, 501 (2d Dep't 1999) (Statements as to the "health and welfare of consumers, were protected by privilege"). The Mayor must be allowed to inform the people whom he serves, and especially the parents of school-age children, about the administration of the school system. Indeed, parents are "participants in public education, without whose cooperation public education as a practical matter cannot function." *Melzer v. Bd of Educ. of the City Sch. Dist. of the City of N.Y.*, 363 F.3d 185, 199 (2d Cir. 2003). In this instance, the "public's need to know must . . . take precedence over the individual's right to defend his reputation in court." *Lomardo*, 18 N.Y.2d at 401.

Even if the statement by Mayor de Blasio is not protected by an absolute privilege, and it is, the defamation claims should still be dismissed because the Complaint fails to plead the elements of this claim. As an initial matter, plaintiff has not identified a false statement by the Mayor about the plaintiff. The quoted language expresses that the DOE will be doing a full investigation of the allegations in the *Daily News* article. That is a true statement. It also states that the behavior described in the *Daily News* article has not been "a widespread problem." Not only is this not about plaintiff, there is also no allegation that this is a false statement. It also expresses that it is the DOE's intent to conduct more training to help all DOE "teachers to think about these issues better." Again, this is not about plaintiff and is also not alleged to be false. Finally, it also expresses the Mayor's opinion that the conduct described in the *Daily News* article, and which the DOE is investigating, is "not acceptable." It is clear from the context in

21

which the statement was made that a reasonable listener would believe that this is Mayor de Blasio's subjective opinion about the allegations in the *Daily News*. *See Melius v. Glacken*, 94 A.D.3d 959, 960 (2d Dep't 2012); *Farrow v. O'Connor, Redd, Gollihue & Sklarin, LLP*, 51 A.D.3d 626, 627 (2d Dep't 2008).

<p style="padding-left: 2em;">b. <u>The claims against the Councilmembers fail</u></p>

The defamation claims as to Councilmembers Dromm and Williams should also be dismissed. As an initial matter, while the Complaint appears to quote an article that quotes the Councilmembers, it is entirely silent as to when the statements were actually made, where they were made, and to whom it was communicated to. "To survive a motion to dismiss a defamation claim, a plaintiff must 'identif[y] the purported communication, and [indicate] who made the communication, when it was made, and to whom it was communicated." *Fleming v. Hymes-Esposito*, 2013 U.S. Dist. LEXIS 45912 at *20-21 (S.D.N.Y. Mar. 29, 2013) (quoting *Prowley v. Hermar Ins. Corp. of Am.*, 2010 U.S. Dist. LEXIS 45249 at *6) (S.D.N.Y. May 7, 2010)). For this reason alone, the claims as to Councilmembers Dromm and Williams should be dismissed.

Regardless, even if plaintiff had pleaded such facts, the defamation claims against Councilmembers Dromm and Williams should still be dismissed. First, it is not pleaded in what context these statements were made. As elected members of New York's City Council, it can only be presumed that the action is barred by, at a minimum, by a qualified privilege, but also an absolute privilege. *See Hakim v. James*, 169 A.D.3d 450, 451 (1st Dep't 2019); *see also Savoy of Newburgh, Inc. v. City of Newburgh*, 242 F. App'x 716, 720 (2d Cir. 2007). Second, it is not even evident that these statements are about the plaintiff – neither statement references her and Councilmember Williams does even vaguely refer to an event.

Third, even if the Complaint adequately pleaded the missing facts, the defamation claims against Councilmembers Dromm and Williams should still be dismissed as it is evident that these statements are their opinions and, thus, are not actionable.  *See Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380-81 (1977).  Significantly, expressions of opinion – even of opinions that ultimately prove to be erroneous – are safeguarded.  *Id*.  In determining whether an alleged defamatory statement constituted an opinion, courts are to consider the context of the communication as a whole, in addition to its tone and purpose.  *See Mann v. Abel*, 10 N.Y.3d 271, 276 (2008).  Moreover, New York courts are clear that where the tone of a statement bears an indication of anger or "fiery rhetoric," it is evident that the speaker of the alleged statement was expressing his or her personal opinion.  *See, e.g.*, *Sandals Resort Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 42-43 (1st Dep't 2011); *Melius*, 94 A.D.3d at 960.  Here, the Councilmembers' alleged use of words such as "traumatic" and "grotesque" make clear that the statements are subjective personal opinions.   Accordingly, the alleged statements are nonactionable.  *See Sandlas Resort Int'l Ltd.*, 86 A.D.3d at 43; *Melius*, 94 A.D.3d at 960; *Borzellieri v. Daily News, L.P.*, 975 N.Y.S. 2d 365, 365 (N.Y. Sup. Ct. Queens Cnty 2013).

Finally, even if the statements were about the plaintiff, and they were false, plaintiff has not adequately alleged that they were made with the requisite degree of fault.  The Councilmembers could not have known the outcome of the OSI Investigation that had not yet been completed.   Thus, the defamation claims against Councilmembers should also be dismissed.[8]

---

[8] As the defamation claims against Mayor de Blasio and Councilmembers Dromm and Williams all fail, the defamation claims also fail as to the City.

**2.      Plaintiff's Fraud Claim Should Be Dismissed**

To the extent plaintiff intended to assert a fraud claim against the DOE Defendants and City, *see* Compl. p. 46, that claim must be dismissed for failure to plead a fraud claim.  To state a claim for common law fraud in New York, plaintiff must plead that: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss[.]"  *Stephenson v. PricewaterhouseCoopers, Ltd. Liab. P'ship*, 482 F. App'x 618, 622 (2d Cir. 2012) (citation omitted).  Rule 9(b) requires the plaintiff to "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"  *Clark v. Advanced Composites Grp.*, 2019 U.S. Dist. LEXIS 80639, at *52-53 (S.D.N.Y. May 9, 2019) (citation omitted).  Moreover, where multiple defendants are alleged to have committed fraud, "[t]he requirements of Rule 9(b) are 'not satisfied by a complaint in which defendants are clumped together in vague allegations.'"  *Clark*, 2019 U.S. Dist. LEXIS 80639 at *53 (citation omitted).  The Complaint does not plead any of the elements of a fraud claim, let alone with the particularity required by 9(b).  Indeed, plaintiff mentions the word "fraud" only once in the Complaint – in the heading listing the causes of action against the DOE Defendants and City on page 46.

**3.      Plaintiff's IIED and NIED Claims Fail**

Plaintiff asserts both intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims against all defendants.  Compl. ¶¶ 195-209.  New York State courts have held that "claims of intentional infliction of emotional

distress against government bodies are barred as a matter of public policy." *Dillon v. City of New York*, 261 A.D.2d 34, 41 (1st Dep't 1999); *Lauer v. City of New York*, 240 A.D.2d 543, 544 (2d Dep't 1997). Even if plaintiff's IIED and NIED claims are not otherwise barred for failure to file a timely notice of claim, they should still be dismissed as plaintiff fails to plead allegations of extreme and outrageous conduct, a causal connection between the conduct and plaintiff's alleged injury, severe emotional distress, intent to cause that distress, or that the City Defendants and DOE Defendants owed the plaintiff a "special duty."

"A cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Dillon*, 261 A.D.2d at 41 (citation omitted). "Such extreme and outrageous conduct must be clearly alleged for the pleadings to survive dismissal." *Id*. "Adverse employment actions are simply not a sufficient basis for an intentional infliction of emotional distress claim, even when coupled by verbal harassment." *Fahmy v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 20929 at *22-23 (S.D.N.Y. Sept. 26, 2005). In fact, "[c]ourts have 'rarely recognized' a claim for intentional infliction of emotional distress in an employment context, and when they have, the claim also included a claim of sexual battery." *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 111 (E.D.N.Y. 2011) (citation omitted). "Additionally, it is well settled that the 'circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.'" *Id*. at 135 (citation omitted).

Plaintiff has not pleaded that the DOE Defendants or City Defendants engaged in any extreme and outrageous conduct, a causal connection between the conduct, and injury or severe emotional distress.  Rather, "[p]laintiff's allegations are in substance, a reiteration of Plaintiff's belief that [s]he was unfairly terminated.  New York law does not recognize tort claims for wrongful discharge, accordingly, a plaintiff's attempt to disguise such a claim as one for intentional infliction of emotional distress will not succeed."  *See Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. Mar. 15, 2011); *see also Martinez v. O'Leary,* 2013 U.S. Dist. LEXIS 94050 at *15 (E.D.N.Y. June 28, 2013).  Moreover, it is well established that "allegations of employment discrimination cannot be transmuted into tort claims sounding in negligence." *Daniel v. T&M Prot. Res., Inc.,* 992 F. Supp. 2d 302, 315 (S.D.N.Y. 2014), *vacated and remanded on other grounds* by 689 Fed. Appx. 1(2d Cir. 2017).  Plaintiff has also not alleged that either the DOE Defendants or the City Defendants owe her a "special duty."   Courts have consistently held that an employer does not owe a special duty to an employee.  *See, e.g.*, *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011); *Dollman v. Mast Indus.*, 731 F. Supp. 2d 328, 341 (S.D.N.Y. 2010).  Thus, the IIED and NIED claims should be dismissed.[9]

### 4.    Plaintiff's Negligence Claim Fails

Plaintiff also asserts a claim for "negligence" against all of the defendants. Compl. ¶¶ 188-194.  That claim fails as to the DOE Defendants and the City Defendants for the same reasons that the NIED claim fails.  First, plaintiff has failed to file a timely notice of claim.

---

[9] Plaintiff's NIED and negligence claims fail for the additional reasons that plaintiff cannot assert both an IIED and NIED claim for the same set of events.  Dismissal is appropriate where plaintiff attempts to claim that the same set of events were both intentional and negligent.  *See Wolfe v. City of Rochester*, 2016 U.S. Dist. LEXIS 139210 at *16 (W.D.N.Y. Oct. 6, 2016).

*See infra.*  Second, an employee cannot maintain an action for negligence against its government employer absent a special duty.  *See, e.g.*, *Johnson v. N.Y.C. Bd. of Educ.*, 249 A.D.2d 370, 370 (2d Dep't 1998); *Horan v. BOCES*, 2015 U.S. Dist. LEXIS 144754, at *7-9 (E.D.N.Y. Oct. 26, 2015).  Finally, plaintiff cannot convert her employment claims into a claim for negligence.  *See infra*.

**C.     PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISED**

Plaintiff also attempts to assert a breach of contract claim against the DOE Defendants and the City for breaching the contract between the DOE and the UFT and the Chancellor's Regulations.  *See, e.g.*, Compl. ¶¶ 166, 176.   This is plainly an impermissible attempt by plaintiff to circumvent the requirement of bringing a proceeding in New York State Supreme Court pursuant to Article 78.  *See Gutt v. Nassau Health Care Corp.*, 2005 U.S. Dist. LEXIS 38775 at *14-15 (E.D.N.Y. March 23, 2005).   No matter, the law is clear that an individual employee who has entered into a collective bargaining agreement, by becoming a union member, "has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union."  *Berlyn v. Board of Ed. of E. Meadow Union Free Sch. Dist.*, 80 A.D.2d 572, 573 (2d Dep't 1981), *aff'd* 55 N.Y.2d 912 (1982). Plaintiff even admits the union has filed grievances on her behalf.  *See, e.g.*, Compl. ¶¶ 176-77.

To the extent plaintiff is attempting to allege a breach of contact claim based on the contention that the DOE Defendants and the City did not comply with certain procedures described Chancellors Regulation A-420, such an argument fails.   First, even assuming a Chancellor's Regulation could be found to be analogous to an employee handbook, and there is no authority for that, plaintiff has not adequately alleged an implied contract claim as she has not alleged that she relied on the policy to her detriment or that she suffered damages directly from

27

the alleged breaches.  *See Kane v. City of Ithaca*, 2018 U.S. Dist. LEXIS 131457 *20 (N.D.N.Y. Aug. 6, 2018); *Belgrave v. City of New York*, 1999 U.S. Dist. LEXIS 13622 at *143-44 (E.D.N.Y. Aug. 31, 1999).   Second, as a probationary employee, plaintiff was an at-will employee.   Under New York law, there is generally no contractual liability in an at-will employment relationship.  *See Hargett v. Metro. Tr. Auth.*, 552 F. Supp. 2d 393, 402 (S.D.N.Y. 2008*), aff'd on other grounds*, 381 Fed. Appx. 12 (2d Cir. 2010). Even if there were, the claim would still fail.  It is evident from the Complaint that the DOE Defendants complied with the regulation.  *Compare* Compl. ¶166 bullet point 1 (citing A-420(VI)(B)(S)), *with* ¶ 71 (admitting plaintiff received a 48 hour written notice); Compl. ¶166 bullet point 4 (citing A-420(V)(C)), *with* ¶ 66 (admitting that she was notified of the OSI Investigation on the same day she was reassigned from X118).   As to other citations in the bullet points in ¶166, plaintiff entirely misconstrues the requirements.  Bullet point 3 concerns the removal of an employee from their assignment during an OSI Investigation.  It places no time limit on the removal or any other limits on the extent of the removal.  Bullet points 5-7 concern steps *OSI* should take during their investigation.  But, the actions plaintiff complains about were actions taken by defendant Cox.  Thus, plaintiff's breach of contract claim should be dismissed.

## POINT III

## <u>OSI IS NOT A SUABLE ENTITY.</u>

Defendant OSI is part of the DOE and is therefore not itself a suable entity.  *See, e.g.*, *Fox v. N.Y.C. Dep't of Educ.*, 2015 U.S. Dist. LEXIS 110857 at *1 n.1 (S.D.N.Y. Aug. 20, 2015).  Accordingly, OSI should be dismissed as a defendant.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint as against the

DOE Defendants and the City Defendants, and grant such other and further relief as the Court

may deem just and proper.

Dated:          New York, New York
                July 1, 2019

                                    **ZACHARY W. CARTER**
                                    Corporation Counsel of the
                                       City of New York
                                    Attorney for DOE Defendants & City Defendants
                                    100 Church Street, Room 2-143
                                    New York, New York 10007
                                    (212) 356-1104
                                    abalog@law.nyc.gov


                              By:    /s/ Aliza J. Balog
                                     Aliza J. Balog
                                     Assistant Corporation Counsel